Next we will call appeal number 06-1576 Saunders Group v. Comfortrac Mr. Roberts, good afternoon to you. Good afternoon, Your Honor. Welcome to the court. Please proceed. May it please the court, counsel, the district court's construction of the term pneumatic cylinder in claim 1 of the patent in suit we submit amounts to an inappropriate judicial redrafting of that claim to take away scope that was allowed by the PTO after its own examination of this claim as part of the 690 application. Well, I don't understand quite what the reference to the PTO signifies. It seems to me that the PTO has allowed in its form. Well, I don't understand us to be in any way bound by anything the PTO does. So the fact that the PTO allowed this and allowed it in the form that we all see in the documents seems to me doesn't prove anything. Well, Your Honor, the point is that it is inappropriate for a court to import or add a limitation into a claim out of a perception or a concern that as allowed and as it exists today, it is somehow invalid or shouldn't have been issued in the first place. It was issued in a form in which we submit the plain meaning of the language in this claim is quite clearly drafted and allowed to cover pneumatic cylinders that can maintain a generally static traction force without the use of pressure activated seals. And we think there are three main points that demonstrate this conclusion. Are you familiar with the Allick case? Yes, Your Honor. Yeah, which is incited in your brief. It strikes me as pretty close on the facts here, particularly both on the specification issue and on the prosecution history. Because in Allick, the court relied heavily on disclaimers in the course of the prosecution of a parent application, even though the claim language was changed as it was here in a material respect. And what the court said was that you can't come in, excuse me, get a patent granted because a claim limitation is included and then strip that out in a continuation application and get the patent granted without the key feature in it. I mean, troubling. I don't agree with that characterization of Allick, Your Honor. You don't? Was it not true that the play limitation was present when the disclaimer occurred in the earlier prosecution? The claim limitation in the earlier prosecution was there. And it came out. And yet the court said over Judge Shull's dissent that the prosecution history was significant, even though the claim language has changed. I believe an important distinction with Allick as compared to this case is in that case there was an express disavowal of the concept of play. But it can't be distinguished based on the fact that the claim language was different in the parent application and in the child application, right? That may well be the case, Your Honor. But I would also point out to the court that another decision of this court, Ventana Medical Systems, issued fairly recently, has the same scenario where the limitation, in that case the limitation was directly, was in the parent prosecution and claims in the parent prosecution were allowed based on the court's decision. I'm familiar with the case, but first of all, it came after Allick, point one, so it can't change Allick. And second, Ventana was not a situation in which a particular claim limitation was relied on to get the parent granted and then stripped out with respect to the child. And that's the problem that you face here. It looks very much as though when the parent was being prosecuted that this pressure activated seal was essential to getting the patent granted. And then that was stripped out in the continuation application, and one wonders why the continuation application wasn't subject to the same limitation, even though the language was stripped out. I don't think one can conclude that it was essential to allowance of the 174 for the simple reason that there was never a claim in the 174 prosecution that omitted the pressure activated seal limitation, and therefore the question of whether a broader claim should or should not be allowed was not decided or considered during the 174 prosecution. I think that's a primary reason why this is one of those cases where it's not appropriate to use prosecution history from a parent application where all of the claims have expressly in the claim itself the limitation that is being sought under the theory of prosecution history to be written into a claim in the continuation application, where it's clear that that continuation was filed for the purpose of getting a broader claim that did not contain that limitation. Well, why didn't you file for reissue and say we mistakenly left out some subject matter in the first application we had a right to claim, so we're filing for broadening reissue? Well, I think it's an appropriate prosecution procedure to use a continuation application to seek broader claims than were sought in a parent application. I think that is standard protocol, and this court has noted on several occasions that that is an appropriate prosecution practice. Well, it may depend on the nature of the change. It may not be appropriate in every conceivable circumstance just because it's appropriate in a conceivable circumstance. And I don't think there is any reason to believe it was an inappropriate practice here, and I don't think any such circumstance has been pointed out by the district court below or by the defendants here on appeal. Let me ask you this. In both the abstract and in the summary of invention, I think it's fair to say that one of the factors that tends to cut against your side is the fact that in both of these locations where the context certainly suggests to me a discussion of the invention as a whole rather than one embodiment of the invention, there is a reference to the piston having at least one pressure-activated seal. Now, if you intended to clearly distinguish this patent from the prior 174 patent, why didn't you modify that language? This was prosecuted by your firm, as I understand it. That is correct. Right. So it would seem to me that leaving that language in there is at least dangerous. It had to be obvious to somebody prosecuting this that if this issue of claim breadth litigated, there would be a question as to whether you were stuck with the narrow definition in the original specification or whether you had broader claim. Is it because you were concerned with a new matter rejection, or why? Well, Your Honor, I personally was not involved in the process. Well, but it's your firm, so you can speak to it. I'm sure you've spoken to the person who prosecuted the application. I will do the best I can to answer your court's question. My understanding is that the specification essentially has to remain the same in this kind of a procedure where it is a straight continuation from the 174 application. As opposed to a CIP, in which case you could modify it. Right. But the purpose of that is to avoid an introduction of a new matter and changing the priority date. So in order to obtain the original priority date, you were stuck with the disclosure in the original, which had strong suggestions, at least, of the required nature of the pressurized seal. May I respond on your perception of the suggestions on a couple of levels? Sure. First of all, I think it is important to look at the first sentence of the summary of the invention, which does describe this invention in broad terms as a portable traction device powered by a pneumatic cylinder. Period. Full stop. That's the first sentence of the summary. I think if you look at the way this is structured, that summary of the invention tracks very well with Claim 1, which is the broadest claim in this 690 patent, which describes a portable traction device powered by a pneumatic cylinder that has the capability of maintaining a static traction force for the requisite period of time. Then the summary of the invention, after that first sentence, goes on to say, in addition, this invention is directed to a pneumatic cylinder suitable for use in such a device. Where are you now? Precisely where are you? Column 2 somewhere? Column 1, line 66 and 67 is the first sentence, which we submit tracks very well with Claim 1. Yeah, you made that point, and then you were going on to say what else was said in the summary of the invention. Right, the immediately following sentence. I misquoted it. The present invention is also directed to a pneumatic cylinder. Right. So I think this does signal to the public that the invention is broader than just a pneumatic cylinder. It is also directed to a device as a whole that is powered by a pneumatic cylinder. And that's what Claim 1 says. Moreover, I think it is important, it's a point that wasn't highlighted in the briefs, but the district court was aware of it and noted it in footnote 3 of her opinion, that in the original application that started this prosecution, the 189 application, there were claims during that prosecution that were asserted that omitted the pressure activated seal limitation. And so I think that is a reflection that the inventors and the applicants way back then did have in mind that their invention was not necessarily limited to pneumatic cylinders with pressure activated seals. Can we go back to the top of Column 2 and the summary of the invention? It's quite fair, I think, for you to say the first two sentences seem to speak to a very broad invention not limited to seals. But starting at line 3, there is a long paragraph, column 2, line 3, which without qualification starts to get very specific about the support structure, the carriage, the pneumatic cylinder, the piston rod and so forth. And it includes the sentence saying, quote, the piston has at least one pressure activated seal extending circumferentially around the piston for engagement with an inside surface of the cylinder housing, period, end quote. Yes, Your Honor, that language is there. I believe that is properly construed as a description of the preferred environment. Well, there certainly isn't any of the normal signal of that like preferentially or such as or can be, etc. It says in a rather unqualified phrase, the piston has, the piston has. Particularly you've got it in the next paragraph. The next two paragraphs. It begins in one embodiment. The next paragraph starts talking about embodiments. There isn't any discussion about embodiments in the paragraph that Chief Judge Michel read to you. I believe that this specification needs to be viewed in light of the purpose of the specification, which is to teach how to practice the invention and disclose the best mode. It is not intended to define the scope of the invention. That's what the claims are for. And when we get to the claims, I think it is very clear to one of ordinary skill in reading Claim 1 that a pressure activated seal is not a part of that claim. If it didn't have this specification with it, you might have quite a strong point. But the trouble is the specification and the claims are part of a unitary legal instrument. And we have legion case laws saying you must read claim terms of all the claims in light of the specification. So first thing in the specification, not the first thing, but one of the first things is the section summary of the invention. Why isn't it fair to read the summary of the invention? Is the inventor telling you what he invented? Well, certainly that is part of the invention. But every claim doesn't need to include every element of an invention. You can have some claims on some parts of an invention and other claims that cover other parts. I don't think it's fair to read this summary of invention as if it requires that every claim include every detail that is described. But Judge Lake has a very good point. The paragraph after the paragraph from which I read says in what embodiment. The next paragraph starts out in an alternative embodiment and so on. So one might say that up to column 2, line 18, it was a description of the invention. And from line 18 on, it was a description of various differing embodiments of the invention. I don't think that's a fair reading because of the first sentence of that summary, which does suggest a broad invention and is then followed by more specifics. Moreover, I do think it is important to keep in mind that at column 7, line 40 and 42 in particular, this specification does remind the reader that the specification does not disclose all structures or all embodiments, but rather describes the preferred ones and that the scope of the invention should be judged by the structures described in the claims, not just those in the specification. I want to bring you back for a moment to the prosecution history because I want to understand your theory. And I'm going to give you a hypothetical. I know you're going to tell me it doesn't represent the facts of this case, but just accept the hypothetical. Suppose there's a claim that's prosecuted in the parent application and it's absolutely identical to the claim that we're dealing with here, except that it has the pressure seal language in it. And in order to get that first claim granted, the applicant represents to the patent office that the prior art is distinguishable because of that single feature, that is the pressure activated seal. Are we in a situation where that should be treated as a disclaimer, binding with respect to the second claim from which the language has been stripped? Our position is no, Your Honor. So why not? It seems to me that it is very troubling that you could prosecute through the parent application, represent that this invention is patentable solely because of the pressure activated seal, and then go on in the continuation application and drop that feature out and get a patent on something which originally you couldn't have gotten the patent on. I don't think it is troubling when the discussion is in the context of a claim that has that limitation in it in black and white. Because then I don't think it's fair to say distinguishing the prior art because of that element and that element only is a statement saying the only reason I can get any claim at all is because of that limitation. It's simply an observation that nothing in the prior art discloses this particular limitation. Therefore, this particular claim that is being examined is allowable over the prior art. I think that's a very different thing. And the statements that we have in this case— And Alec rejected the argument that you're making now, though, didn't he? Well, I don't believe so. And I believe the other cases we've cited, which are the Ventana medical systems, the Rescue Net case, the advanced cardiovascular case— And why exactly didn't Alec reject that argument? Well, I believe Alec had additional factors that caused the court to rule the way it did, primarily that there was a disclaimer or a disavowal of play with respect to the Brodden claim, as I recall. And also the specification in Alec did criticize the prior art specifically because it lacked play. And we don't have that factor here. So I think there were additional factors in Alec that led to that result that don't exist here. And we think this case should be governed by the Ventana medical and Rescue Net line of cases. And I think one policy point I want to make here to the court is if this were the rule that one couldn't use continuation application to seek a broader claim than was sought in a parent, effectively, continuation application would only be useful to get narrower claims. It couldn't be used to get broader claims because— Well, I didn't hear anybody suggest so far-reaching a rule. Well, to the extent— Judge Dyke's hypothetical was quite a bit narrower than that. To the extent what happened here is a number of pieces of prior work were proposed by the examiner saying, doesn't this anticipate or render office this claim of the 174? And what the lawyer from my firm did was point out the fact, no, that piece of prior art is different patent office because it doesn't have a pressure-activated seal. That is a far cry from saying, from asserting that we have no invention unless there's a pressure-activated seal. That's a very different statement. If your ultimate conclusion from the differences on which you rely, that the prosecution history of the parent patent is of less probative force, or that it's utterly irrelevant and legally erroneous to even look at? Our position is it is irrelevant because the claim is different. It is significantly different. So Judge Brinkman erred right off the bat by even talking about it and relying on it even in part, in your view. Right. This Court's case is in Ventana and Rescue. It can be general background, but it can't be used to support a prosecution history disclaimer when the very limitation that is now trying to be imported by disclaimer was there in black and white in the parent and was quite clearly and deliberately and notoriously taken out in the continuation. That claim should be construed anew according to the 690s prosecution history. Well, but you, I may misunderstand your position, but if we change Judge Dyke's hypothetical slightly and we have the disclaimer that's in the first case is a statement that, well, the prior art, the prosecuting attorney says, is similar in all respects to my claim except that it lacks a pressure-activated seal, then in that case, wouldn't you say that in the second prosecution, that disclaimer would be important, indeed, perhaps even binding? Because there, you've actually said the only difference between the prior art and my invention is that I have a pressure-activated seal. Well, number one… If that's what you've said in prosecution one, then you're stuck in prosecution two with the consequences of that statement, correct? You're not arguing that that's simply, I had my fingers crossed for purposes of the second prosecution. That's ordinary estoppel. I don't think that's a disclaimer. That is ordinary estoppel. Well, but I just want to make sure that you're not saying that there's just a hard and fast line between the first prosecution and a separate patent and anything that's said in the context of that and the second patent. You're not suggesting that, right? I think that would be extreme, but I think in this context… Just to make sure I understand, extreme or not, you're not making that argument, right? Well, I'm not saying a trial court can never look, or this court can never look at a patent application… Well, take my hypothetical. In that case, would you be bound by the statement made in the first prosecution in connection with the second prosecution? I don't believe it would be as a matter of disclaimer. I think that it would be simply the fact that any claim would need to be invalid because the prior art covers it. If you're correct, if you persuade us that the prior art in the parent patent in this case could not be relied on at all by the district judge, but you failed to persuade us on all your other points, would we have to reverse just because of the reference to the prior prosecution history? I believe so because that is the only basis that can support the court's importation of the pressure-activated seal limitation. There is nothing in the claim, and I think all the other claim construction principles here, the plain meaning of the terms, the ordinary meaning, which is undisputed on the record, it does not include the pressure-activated seal and the ordinary meaning of those words. The claim differentiation doctrine is particularly strong here when you compare Claim 1 to Claim 6, 14, and 15, where the same verbal formulation for pressure-activated seal limitations is used every time. So in your view, that one piece of reliance by itself makes the decision necessarily reversible by us? Well, if the court were to disagree with our view and conclude that the specification all by itself required the claim to be read in this narrow fashion, then I can see the court affirming on that ground. I would disagree with it strenuously, but I can understand that. But to me, substantively, if you take away the prosecution history from the 174 and set that aside, this case needs to be reversed. Now you, of course, argue with all appropriate citation to the relevant authority that the requirements of unmistakable disclaimer aren't met here. But is the issue really disclaimer, or is it more the, I don't know whether to call it the obverse or the opposite or what, but it may be that it would be inappropriate to conclude that the prosecutor was saying, my invention and my claims can't cover anything without a pressure seal, pressure-activated seal. It may be unfair to say that that's in effect what he represented to the patent office if you just look at it as disclaimer. But if you look at it in the opposite way, wouldn't it be reasonable to conclude that he was saying the same thing in the opposite semantics, that my invention always requires a pressure-activated seal, in which case we're not really talking about disclaimer, we're talking about a whole different line of cases in which an applicant makes clear that an essential part of his invention in every conceivable embodiment is that it have X, in this case pressure-activated seal, but it could be anything. And there's a whole different line of cases involved. I do not believe it is either of those situations. And I do ask the Court to very, and I know the Court will, very carefully look at each of the purported disclaimers that Judge Brinkman relied on that are pointed out in the briefs. We feel very strongly that when those are each looked at individually and carefully examined in the context in which they are made, they are not disclaimers.  Yeah, but I'm trying to get you to focus on a different line of analysis. I'm saying assume we agree with you that the disclaimers, the alleged disclaimers, were insufficiently clear and unmistakable. Therefore, we reject intentional, explicit, unmistakable disavowal. But under the other line of cases where an applicant makes clear that his invention must always include a certain feature, he doesn't disclaim anything, he does the opposite. He says my invention always requires that it contain X. Why wouldn't that second line of cases doom your appeal here? Because the causal link between the failure to maintain a static traction force and the seal that is used in the pneumatic cylinder is not there in the prosecution history. That is not in those statements. That is an inference that was drawn by the defendants and by the Court below, but it is not in those statements. One classic example is the Gantz patent, which is in the appendix at 2460. That patent, we never disputed below in the examination that the Gantz patent had a pneumatic cylinder that could maintain a static traction force. It's got a rolling diaphragm seal, and in fact a claim of that patent says, The apparatus of claim one wherein the piston and cylinder include a leak-proof rolling diaphragm for preventing any leakage from effecting pressure exerted by the piston in the tension line, whereby a force in the tension line will be maintained over a period of time. The fact is when this prosecution history is carefully examined, there was not a suggestion that a pressure-activated seal was required or was the only way to maintain a static traction force. If I understand you correctly, you're saying under either line of cases, there just isn't factual support for the idea that O-rings are disclaimed or pressure-activated seals are necessary to the invention. That is correct, and we show in our briefs very carefully why that is not the case. For example, Loveless, that is a unique double-acting cylinder, and it's a patent that claims a novel use of an O-ring seal and a double-acting cylinder. The fact that Loveless wouldn't do the job is not a disclaimer as to all O-ring seals, let alone all pneumatic cylinders. What about the reliance on enablement, and perhaps to an extent other aspects of patent validity? Do you think that the district judge reversibly erred just on her reference to the lack of enablement as she saw it? Well, I believe she cited that as an additional reason to support the results she got. I don't think it is an appropriate additional reason for two reasons. But is it by itself enough to require reversal? If that were the sole ground for this Court's considering affirming the decision, I believe it is, yes. Because this claim is not ambiguous, such as so as to require an enablement, so as to require importing a limitation that's not supported by the language. And really there's no textual hook to bring this pressure-activated seal into Claim 1 anyway. This Court has made clear that that kind of an approach in its recent law is a last resort. And this is just not that kind of a case. Moreover, enablement was not even raised as a defense by the defendants in this case below. So I don't believe that would be a proper analysis. All right. Thank you. Will I have some time for questions? Yes, indeed. We'll restore your full five minutes of time. Mr. Davis. Good afternoon, and may it please the Court. There are a number of issues that I'd like to address with respect to what Mr. Roberts said. But I think the first place to start is with respect to Mr. Roberts' statement about the first two paragraphs in the summary of the invention, which is at A119 of the record. Mr. Roberts points to the statement that the present invention is directed to a portable traction device powered by a pneumatic cylinder as evidence, somehow, that the District Court got the clean construction of pneumatic cylinder wrong. The issue, of course, here is what a pneumatic cylinder means within the meaning of the 690 patent. It's not enough to merely point to the words. Your problem seems to me, based on the patent, is particularly Claim 6, which specifically mentions a pressure-activated seal as a separate element. How do you deal with that? I mean, it's also present in 1415, but it seems to me 1415 doesn't give the patent even the same strength of argument. But Claim 6 is troubling. We agree with Your Honor that that appears in Claim 6, but I disagree that it's troubling. And the reason is because this Court's precedent is clear, most notably in some race groups, which is relied upon by the appellants, to say that that argument is persuasive only when there is a meaningful difference in the additional limitation. I think I would agree with you. We would agree with you if Claim 6 said the apparatus of Claim 1 comprising at least one pressure-activated seal in the pneumatic cylinder, and then it ended with a period. But it doesn't say that. It goes on and adds significant additional limitations that do add meaningful differences to the term pressure-activated seal. What are the meaning? We all have the same question. I think you understand what it is. Why meaningful? What's so meaningful? Why isn't that just a definition of what a pressure-activated seal is? Well, we agree that that's the obvious question, and I think it's been asked. And the answer, Your Honor, is that there is no evidence that that is what a pressure-activated seal is. If, in fact, we accept that hypothetical, then all of the language that appears in Claim 6 after the words pressure-activated seal are completely redundant and unnecessary. Right. But, I mean, it wouldn't be the first time that a patent contained redundant language. Well, you could have a claim that would describe, by name, a device, and then, in order to make sure that there was no misunderstanding as to the scope of the named device, simply recites its structure and function. That's not too uncommon. It's not uncommon, Your Honor, but it cuts against their argument that everyone with ordinary skill in the art would have understood that this is exactly what a pressure-activated seal is and what it does. But the basic structural problem, it seems to me, the one that Judge Dyke pointed to, is, to me, the biggest hurdle for you. And that is that you have, unlike ALEC, where I don't think any of the claims had the word play in them, so you basically had to import the whole notion of whether play was in or out. Here, you've got different claims with different levels of specificity with respect to pressurized seals. You've got three or four claims that have pressure-activated seals and others that do not have those called out. That seems to be a powerful basis for inferring an intention to distinguish between claims on the basis of the presence or absence of pressure-activated seals, notwithstanding what appears in the Summary of Invention in the Abstract, which, as you correctly point out, looks like it's global in terms of the description of pressure-activated seals. We would agree with you that it's there. I think we would disagree with the amount of power that should be afforded to that language, really for two reasons. The first is, from a global sense and from a legal standpoint, the doctrine of claim differentiation is a tool that can be used, but it cannot override clear statements, whether you call them disclaimer or use another term, in the prosecution history that inform what this claim term means. And if we were to look at Claim 6 standing alone, if this were the only patent in this family, then I agree that it would be a stronger argument. But if we go back and look through the prosecution history, at the statements that were made by the patentee and its attorneys during the prosecution of this family of patents, we see a consistent and repeated trend. Yeah, but there's some that conflicts too. The petition to make special seems to suggest that pressure-activated seals are not critical to the invention, and that the whole point is to try to ensnare a competitor's product that was using O-rings in place of pressure-activated seals. So it looks to me like the prosecution history actually is mixed rather than being all on one side of the equation. Well, I think we disagree that it's mixed. First of all, to back up for a moment, if we focus on the claim language that really is key here, and that is that the pneumatic cylinder, however you define that term, must maintain a generally static traction force, then I think we can read the petition to make special in a different light. I will note that though the examiner is, I believe, presumed to have read the earlier prosecution history, there was a switch in examiners between the 189 application that was abandoned, the 434 application that issued as the 174 patent, and then leading into the 690. And when the petition to make special— Three different examiners? No, there were two. So there was a switch as the application that became the 690 patent was filed. Do we happen to know whether the parent patent, if I can call it that, was before the examiner of the patent asserted in this case? I don't believe we do, Your Honor. But if you look at the record at page A2005, which is the petition to make special, there's a section headed infringement analysis. And what the applicants told the examiner was that a rigid, quote, a rigid comparison of the alleged infringing device with the pending claims has been made. But if you read through this rigid comparison, there's no statement made anywhere in here about the effect of maintaining a generally static traction force. So when this petition to make special was presented to the examiner, it is true that these claims did not contain the limitation pressure activated seal, but neither did the applicant allege or point out to the examiner that there was any indication as to whether that device maintained a generally static traction force. Or whether it included a pressure activated seal or not. Correct. That is true. Could you help me on the prosecution history? I confess to being confused about it. The 174 went up to the board, and if I understand correctly, the board disagreed with the rejection of what was then claim 42, which appears to be at page 1780 of the appendix. Do I understand correctly that far? I'm sorry. 1780? 1780. This claim 42 there was the claim that was allowed. Yes, that's correct. Claim 42 was allowed. But I don't find it in the 174 patent. Was it further amended after the board's decision? What happened? I believe that it was, Your Honor, but I'm not 100% sure. What I do know and can direct, Your Honor, to the board's decision is that claim 42 was allowed by the board over the prior art that was of record specifically because claim 42 recited the duration limitation. That maintaining a generally static traction force occur for a period in excess of 10 minutes. The claims that did not recite that, the examiner's rejections in view of freed in combination with dance were sustained. What's bothering me, and I'm having trouble understanding, I'm trying to reconcile Alec with these other cases like Montana. And what Alec seems to be saying is that if the original claim was absolutely identical to the child claim except for the one limitation, which was the subject of the discussion and, if you will, disclaimer in the first thing, if they're absolutely identical save for that one limitation, then you're going to be bound by the disclaimer that you made or the representations that you made in prosecuting the first patent. But as I read these cases, if there's not an equivalence with respect to the other claim limitations and the other language of the claims, then the fact that the language was changed means that we're not going to pay much attention to the history of the parent application. So my question after that long introduction is, is there equivalence apart from the pressure-activated seal limitation between Claim 42, which was the subject of this possible disclaimer in the parent application, and Claims 1 and 16 that we're dealing with here? The language is not the same, but are they essentially equivalent? They are undoubtedly equivalent, and it's for the reason that both claims specifically require that the pneumatic cylinder of the claimed invention be capable of maintaining a generally static traction force for in excess of a period of, I believe, 10 minutes for one and 20 minutes for another one of the independent claims. That language is carried throughout this entire family of applications, and if you go back and read the prosecution history carefully, you will see that it is on that basis upon which this applicant consistently distinguished the prior. When we look back at the 190 application, for example, we see that there was a rejection in view of the Freed reference. The Freed reference generally disclosed a pneumatic cylinder, and what the applicant said in response is that Freed does not teach maintaining a generally static traction force. That pneumatic cylinder was not qualified as a double-acting pneumatic cylinder or a rolling diaphragm-type pneumatic cylinder. It said generally pneumatic cylinders, and not only did they do that, in the 444 application, they submitted the declaration of William Freed, who was the inventor of the Freed patent himself, and that's at the record at A1599, in which Freed said, my invention was not enabling. And so as far back as 1997, when the first application was filed, we see a consistent position being taken by this applicant that pneumatic cylinders typically leak and cannot maintain a generally static traction force, and even that very statement appears in the summary of the invention to the Board of Patent Appeals and Interferences in the 444 application. But he didn't say they typically leak unless they have a pressure-activated seal or unless they have any particular kind of seal. He just said they typically leak. I don't see how that gets us anywhere. Well, that's exactly the point. It was unqualified. It was pneumatic cylinders known to those of ordinary skill in the art across the board typically leak. Our invention is different, and the reason it's different is because it maintains a generally static traction force. Well, Mr. Roberts maintained that the rolling diaphragm type of pneumatic cylinder is known to not leak at all. Well, I did hear Mr. Roberts say that. But what Saunders and his attorneys told the Patent Office during the prosecution of the 444 application was that the rejection of Gantz in view of Gaskell, which had lubricating seals, was an unsound rejection because that combination would not have been enabled and, in fact, it would not have worked. Let me see if I understand what the core of your position with respect to one question is, and that is if the prosecuting attorneys had said to the board, let's say in the petition to make special, had said in one sentence, I suppose at the end of the opening paragraph, had said, in this application, we are not claiming a required pressure-activated seal. Period. One sentence. Would you lose this case? I don't think we would lose this case. I think it would be a much closer case. The reason I think that... Well, I guess... Well, go ahead. Sorry. And then I'll have a follow-up. The reason that I think that is because that is much closer to the facts of the Libel-Florsheim case. I know Your Honor has a follow-up question, but I would be remiss if I didn't mention how surprised I was not to hear Mr. Roberts mention that case because they relied on it so heavily at the district court and in their opening brief here. And I think the reason why he didn't is a very good one, and that is because I believe Your Honors are aware that that case came up on appeal again and faced with a very similar factual situation to what's at issue here. The court said, fine. We didn't read in the limitation that the district court felt should be read in, and therefore these claims are invalid. And so that opinion, in fact, validated the tact that Judge Brinkman took here. She did, in fact, look to whether validity was impacted from an enablement standpoint at the end. Well, I'm not sure I would characterize the sequence of events quite the same way. It certainly didn't end well for the patentee in that case, but the first stage was to say that you made your claims, you made it clear what your claims were, okay, we'll give you your claims. The second stage was now that you've gotten your claims, we're going to find them invalid. So the entire enterprise didn't come to much, but I think right now Mr. Roberts would probably accept part one and postpone until later part two. But let me ask you this, though. I mean, here's why I'm troubled. If we are looking at this stage, and I think we are mostly, maybe not entirely, but mostly we are looking for guidance as to what the applicant intended to claim. That's basically what we're asking, right? That's correct. All right. If the applicant flat-out says, I intend to claim claims without pressurized, pressure-activated seals, it seems like it's about pretty much the end of the question. That's why, I mean, we've all talked a little bit about, well, disclaimer, and well, the effect of prosecution history, and so forth. But if you just flat-out come in and say, I'm not worried about written description. I'm not worried about enablement. I'm not worried about new matter. We can deal with that downstream. Right now, here are my claims. Here's their breadth. I want them. And the PTO says, you've got it. Then at this point, why doesn't that close the book on claim construction? I don't believe that it does. And the reason is because we're dealing here with a situation where there's a history. And if this were the first patent in this family of applications, I might answer or respond differently. There is no question, as I think Mr. Roberts suggested, that a patentee is entitled to file a continuation application with broader claims. However, the course precedents are clear that if you're going to do that, there has to be support in the original application, in the original specification, to support those claims. What you cannot do is to file three or four continuations, and then down the line, when you become aware of a competing product on the market, draft claims that are broader than your original disclosure. And if you choose to do so, as Your Honor suggested, the way to do that is to file a continuation in part, and that didn't matter, or to seek a reissue of the 174. But my question, though, again, is, is that really a claim construction, claim scope issue, or is it a validity issue? I think at the end of the day it is a claim construction issue because what we're doing is we are looking at the patent specification and we're looking at the prosecution history, the tools, the intrinsic evidence that this court told us in Phillips we should look at to determine what the scope of the claims are. Mr. Davis, what do you make of the point that Mr. Roberts seemed to emphasize somewhat, that validity hadn't even been raised, and that specifically enablement hadn't even been pleaded as a defense? What was the circumstance of the summary judgment motion for non-infringement that was granted that led us here? Had you been required to lay out what your defenses were going to be, or was that something that wasn't even going to be due until after the current summary judgment motion, or what? The discovery had closed, Your Honor. We had exchanged contentions, and the parties moved, cross-moved for summary judgment, as I believe Your Honor is aware. Just on infringement? Just on infringement, and as is the normal course in the Eastern District of Virginia, the court construed the claim terms that it felt it needed to in the context of ruling on the summary judgment motions, but there were no cross-motions for invalidity or otherwise. But was invalidity pleaded? Invalidity was pleaded, Your Honor. I do not believe that we pled enablement. I don't believe that that means that Judge Brayden cannot possibly consider the impact of her claim construction on that analysis. Don't we limit reliance on validity in our case law to where it's very clear that the proffered construction of the breadth of a claim would make it slam-dunk invalid, and therefore that construction would be disfavored as opposed to a narrower construction, let's say of equal plausibility in light of the total document, that would make it plainly valid? And if that's close to what the case law is, how does this case fit in that spectrum? I think that is close to what the case law says, and I think that this case fits within that spectrum quite nicely, the reason being that reading the intrinsic record as a whole makes clear that this patentee believed from the very beginning all the way up through the inventor's deposition during this litigation that pressure-activated seals that maintain a generally static traction force were his invention. Well, I think what Chief Judge Michel was asking you is whether there's anything to the enablement argument. It's a kind of a weak argument, and you didn't even make it, right? Well, I agree that we did not make that argument. I think in part because we believe that our claim construction and our other non-inferential positions... But isn't it a weak argument, the enablement argument? I don't believe that it is, and hopefully we will be affirmed, but if we're not, we may stand here again. The statements that Saunders made with respect to the art he distinguished, the Freed reference most notably, were that Freed contains no disclosure whatsoever of a pressure-activated seal that maintains a generally static traction force. If these claims are read so that there is no pressure-activated seal, the disclosure in these patents is exactly the same as the disclosure in Freed. A pneumatic cylinder. One of ordinary skill in the art would generally understand this to be a pneumatic cylinder. That's exactly what Freed says, and Saunders itself said Freed is not enabled. Now, what about the problem of the patentee getting blindsided? If you hadn't pled lack of enablement, and there had been no validity issues placed before the district court, then until Mr. Roberts reads Judge Brinkman's opinion, he has no warning that he has some obligation to show that the specification does enable the claims as he says they now have considerable breadth. Sure. Let me qualify an answer that I gave a moment ago. I understood, if you're honest, to be asking me if we had, in our invalidity contentions, for example, we did in our summary judgment briefs argue that if the claims are construed as Saunders seeks, the construction that Saunders seeks, that that might lead into enabling problems. So Mr. Roberts was not completely blindsided by the district court's opinion. We had raised that issue in our early summaries. Yeah, but at that point, he can't run out and get an affidavit from some ordinary artisan. The discovery is closed. The record is frozen. And so he can argue in his reply brief that there's no enablement problem. But the trouble is he has nothing to go on except what the written description says and doesn't say. I understand the point that Your Honor is trying to make. I think, again, though, that it reaches to the claim construction issue as opposed to the overriding invalidity contentions that we argued at trial. If I may make one point before my time runs too far, and that is even if this court accepts that Judge Brinkema's claim construction was improper, as Saunders has argued, it would still be appropriate to grant the summary judgment of non-infringement in this case because there is no question, there is no factual dispute whatsoever that the G-3 device— Not the G-2. Not the G-2. The G-2 device rises or falls with— So you're really saying if you reverse, you should only reverse in part, only as to G-2. That's correct. Even if you reverse as to G-2, the ultimate conclusion that there is no factual dispute that summary judgment of non-infringement as to the G-3 is proper should stand because Saunders has admitted that there is one particular component in the accused G-3 that it contends satisfies two separate claim limitations. And in the abstract, that would be fine, but the problem is that in Claim 1 and Claim 16 of the 690 patent, the claim requires that the pneumatic cylinder be attached to the support structure. In its summary judgment acquisition brief at A-622 in the record, as well as in its own summary judgment motion at A-94 and 95, Saunders makes clear that it is relying on one particular component to satisfy those two limitations. And under this Court's precedent of Dolly Fee and Flo, that's completely proper. Thank you, Mr. Davis. Mr. Roberts, you have up to five minutes. Thank you, Your Honor. With respect to the G-3, as we mentioned in our brief, Your Honor, we submit it's premature to consider that issue. It was not dealt with by the district court, and we disagree with counsel's characterization of our position. And so we think it should not be dealt with. Was it the subject of the summary judgment motion? No. Well, that issue was briefed, but the district court did not rule on it. So it was raised. Well, the argument on the G-3 was raised, and we dealt with it, and we believe we have a position that is worthy of full consideration. And we don't think that's been provided here. I would note the record citations for the documentation of our position. 418 to 423 is our expert's declaration on that point, and 618 to 622 is the portion of our brief that discusses the attachment issue. We do have a legitimate claim construction that does lead to a infringement of the G-3. What about whether there are differences between Claim 42 and the claims that we're dealing with now, Claim 1 and 16, in terms of the claim elements other than the pressure-activated seal? The fundamental difference, Your Honor, is that Claim 42, like all the claims of the 174, were lumbar devices as opposed to cervical devices. Is there any other difference? There is difference in language. The substantiality of that difference I'm not prepared to address here as a statement. There are differences in language, but there are a lot of similarities, too. Was your previous point that you're entitled to summary judgment of infringement on the G-3 devices or that you're entitled to trial? On the G-3, trial. On the G-2, we think summary judgment, because defendants did concede below that every other element is present on the G-2. It was clear the only element in dispute on the G-2 was whether or not a seal was required. The G-3 is more complicated. I would like to address a few other things. First of all, with respect to the Allick case, Your Honors, advanced cardiovascular systems, another case we rely upon for the proposition that the prosecution history of the parent is not relevant to the claims in the continuation when the limitation that issue has been explicitly dropped. That case is a 2001 case, so it did predate Allick. And it does focus on the fact that the claim term was literally dropped from the parent to the younger patent. With respect to the Ganz-Gaskell discussion... Coming back to Allick, if I can hold you on that case just for a second. Other than to say that there are other cases that say different things, whether prior to Allick or afterwards, dealing with the facts and the analysis of Allick itself, what do you think is the best way to distinguish Allick, if you think it is? I believe it is distinguishable based upon the fact that in that case there is much more compelling evidence of disclaimer with respect to play in the specification of the very patent that was in suit. Not talking about statements in a parent application years before, but in that specification and in that prosecution of the actual patent in suit. I think it's just a different case for that reason. But not different on the prosecution? I think the factual circumstance that the court described earlier, I think it is basically right. I think we have Allick going one way, and I think we have Ventana and Advanced Cardio and Infra-Gena, Ventana and the other cases we cite in our brief going another way. I think our case is much more closely analogous to Ventana Medical, because we don't have any statements in this specification criticizing the prior art because it doesn't have a pressure-activated seal, and we don't have anything in the 690 prosecution itself that argues about pressure-activated seals being necessary to the invention. They were explicitly and clearly dropped, and we filed a petition to make special, which clearly manifested to the public and to the defendants in particular that we didn't think a pressure-activated seal was required. Their G2 device doesn't have one. No one has ever contended that it does. With respect to the Gantz-Gaskell discussion, it is not fair to say that below the applicant argued that Gantz failed because it lacked the ability to maintain a static traction force. I do refer the court to that prosecution history at 1769 and 1770. The issue there was a combination of a cylinder in Gaskell with a pump in Gantz that the examiner was trying to propose that was inoperable. No one claimed that Gantz pneumatic cylinder with a rolling diaphragm seal was inoperable. That's simply not the case. As to the issue of claim differentiation, I think it is worthy of pointing out that if the court looks at Patents 690 and 14 and 15, the same verbal formulation, the same series of words with all that detail in there, is used every time a pressure-activated seal is claimed as a limitation. You think it's basically definitional-type language. Right, and what I think really puts the nail in that issue is if you look at the 174, every claim of that patent that recites a pressure-activated seal uses substantially the same verbal formulation every time. I think when the applicant wanted to claim a pressure-activated seal, that's the language he used. And when it didn't want to, it took that language out. I think that's pretty compelling. Another point I want to make is I do get a sense that the defendant's argument has shifted a bit from lower court to here. A lot of what they are arguing now is really means-plus-function kind of theory that we should be held to the only embodiment that we taught the world that could meet the functional limitation of maintaining a static traction force. Well, the district court below did find, and it has not been challenged here in appeal, that this is not a means-plus-function claim. And so the means-plus-function reasoning analysis isn't a substitute for a real disclaimer, and you don't have a real disclaimer. You're well beyond your restored time, Mr. Roberts. I think at some point we have to simply close the book here. We thank you both. We'll take the case under advisement.